James **BULLUCK** et al., Appellants,

v.

Walter **WASHINGTON**, Commissioner of the District of Columbia, et al.

Jerome and Maura **FREIBAUM** et al., Appellants,

v.

Walter **WASHINGTON**, Commissioner of the District of Columbia, et al.

Nos. 24862, 24863.

United States Court of Appeals, District of Columbia Circuit.

Nov. 3, 1971.

Messrs. John B. Jones, Jr., William L. Taylor, and Mrs. Harriett R. Taylor, Washington, D. C., were on the motion for appellants.

Messrs. C. Francis Murphy, Corporation Counsel, and Richard W. Barton and David P. Sutton, Asst. Corporation Counsel for the District of Columbia, were on the opposition to the motion for appellees.

Before ROBINSON and MacKINNON, Circuit Judges, and DAVIES,* United States District Judge for the District of North Dakota.

* Sitting by designation pursuant to 28 U.S.C. § 292(c) (1964).

**PER CURIAM:**

The task immediately at hand is resolution of appellants' motion for an injunction restraining appellees from discontinuing a tiny facet of the District's public education program pending decision of the appeal in this case on the merits.[1] Both the issue posed by the motion and our ruling thereon gain perspective from a series of forerunning events. We begin our consideration, then, with a brief summary of the salient facts.

The appeal, already under submission, brought under review the District Court's dismissal of appellants' complaints seeking, *inter alia,* to enjoin on grounds of federal unconstitutionality Section 401(2) of the District of Columbia Revenue Act of 1968[2] and requesting the convocation of a three-judge court to assay their claim.[3] That section prohibits, with certain exceptions, the expenditure of "funds appropriated for the government of the District of Columbia * * * for the cost of education (including the cost of transportation) of any individual in an elementary or secondary school located outside the District of Columbia * * *." Basic to appellants' challenge was the assertion that Section 401(2) imperiled an arrangement by which small groups of District children have attended Bannockburn Elementary School in Montgomery County, Maryland.[4]

The Bannockburn project was initiated cooperatively in 1968 by District and County school authorities and extended briefly into the current school term. It has enabled the attendance, on a voluntary basis, at the almost exclusively white Bannockburn School of a few randomly-selected Negro children who otherwise would have enrolled in the almost all-black Meyer Elementary School in the District. From inception of the enterprise its expense—principally tuition and transportation costs—has been absorbed by the District's Board of Education from its Federal Impact Aid funds.[5] Very recently, however, the Board voted to terminate the offering and the instant motion followed.

The objective of the motion, as previously indicated, is maintenance of the status quo—the continuing attendance of the District group at Bannockburn—pending disposition of the appeal.[6] The factual predicate for the motion is the allegation that financial considerations, including the Section 401(2) restrictions, spelled the doom of the Bannockburn plan. Our scrutiny of the record reveals, however, that Section 401(2) played no significant role in the Board's decision to end the project.

That decision followed a lengthy, vigorous in-meeting debate during which a number of factors associated with the Bannockburn venture were discussed. Close review of the transcript of the discussion identifies a variety of reasons advanced by members who favored cessation of the Board's undertaking. Among those expressed were the nonparticipation of Montgomery County in the expense, the nonattendance reciprocally of Bannockburn children at the Meyer

---

1. Fed.R.App.P. 8(a).

2. 82 Stat. 615 (1968), D.C.Code § 31–1118(2) (Supp. IV 1971).

3. 28 U.S.C. §§ 2282, 2284 (1970).

4. It has been appellants' position throughout this litigation that § 401(2) would exert a substantial adverse impact on Board decisions as to the prolongation of this project.

5. See 20 U.S.C. § 236 *et seq.* (1970). Those funds, it seems agreed, are unaffected by the § 401(2) prohibition.

6. The motion was presented to this court and not, as is ordinarily necessary, to the District Court in the first instance. Fed.R.App.P. 8(a). As reason therefore, appellants allege the urgency for immediate relief rendered application to the District Court impracticable. See *id.* With the disposition we make of the motion, we do not reach the question whether appellants were correct in that view.

School,[7] the non-inclusion of children from District schools other than Meyer, and the lack of a thorough evaluation of the program. Conspicuously absent was any opposition to the program stemming from the prohibition Section 401(2) made with respect to the Board's use of appropriated monies. It goes without saying that we are not at liberty to ignore the Board's determination or the grounds ostensibly inducing it.

To be sure, the financial aspects of the Bannockburn offering were canvassed as the Board pondered its fate. As stated, there was objection that the entire cost, though small,[8] had fallen upon the District; there was protest, too, that the expenditures the plan entailed should be made instead for the academic betterment of children who in any event would remain in District schools. But the Superintendent of Schools gave the Board virtual assurance that funding would be available;[9] indeed, he pointed out that discontinuance of the project might work to the Board's financial detriment.[10] A fair reading of the transcript of the Board's deliberations isolates plainly enough the central concern that the Bannockburn arrangement had not cultivated a two-way educational experience [11] but rather a one-way passage of pupils and funds. And the fact crucial to a ruling on appellants' motion is that no one suggested— much less advocated—dissolution of the plan because of the restrictions Section 401(2) lays on the Board's appropriated funds.

We are unable, then, to discern a nexus between Section 401(2) and the demise, for the time being at least, of the Bannockburn project. Instead, we perceive a Board decision predicated on grounds distinct from the issues presented on the appeal. Appellants postulated, both in the District Court and here, the Board's desire to continue the Bannockburn program and the concomitant possibility that Section 401(2) would frustrate efforts to implement it financially. The requested injunction, on the other hand, would in practical effect compel the Board to maintain an arrangement which upon an evaluation of factors essentially unrelated to Section 401(2) it has decided to halt. Such a transformation cannot permissibly serve to introduce what in essence would be a new case on appeal.[12] Still less can it support the sought-after injunction.

Motion denied.

---

7. The Superintendent of Schools reported to the Board that "provision [had been] made for joint faculty meetings, parent group meetings and exchange student visitation for specific activities" but the record is clear that no County child has been in attendance at the Meyer School.

8. $58,800 for the current academic year.

9. Through either the Board's Impact Aid budget or the Emergency School Assistance Program, 45 C.F.R. Pt. 181 (1971).

10. That, apparently, because the Board's foothold in Montgomery County would thereby be lost, and with it the District's ability to meet an expected requirement of the Emergency School Assistance Program, see note 9, *supra*, of demonstrated cooperation with suburban areas.

11. See note 7, *supra*.

12. *E. g.*, Miller v. Avirom, 127 U.S.App. D.C. 367, 369–371, 384 F.2d 319, 321– 322 (1967).